**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

**Chambers of**                                                        **101 West Lombard Street**
**Douglas R. Miller**                                             **Baltimore, Maryland 21201**
**United States Magistrate Judge**          **MDD_DRMChambers@mdd.uscourts.gov**
                                                                                   **(410) 962-7770**

March 6, 2026

LETTER TO ALL COUNSEL OF RECORD

Re:   *Danielle W. v. Frank Bisignano, Commissioner, Social Security Administration*[1]
        Civil No. 24-3516-DRM

Dear Counsel:

On December 5, 2024, Plaintiff Danielle W. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF No. 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301. I have considered the record in this case and the parties' briefs. ECF Nos. 8, 11, 13, 14. I find that no hearing is necessary. *See* Loc. R. 105.6. The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will REVERSE the Commissioner's decision and REMAND the case for further review. This letter explains why.

## I.        PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") and a Title XVI application for Supplemental Security Income ("SSI") benefits on March 9, 2021, and March 26, 2021, respectively, alleging in both applications that she became disabled on February 3, 2020. Tr. 235-246; 252-275. Plaintiff's claims were denied initially and on reconsideration. Tr. 125-140; 142-153. On March 27, 2024, an Administrative Law Judge ("ALJ") held a hearing. Tr. 47-77. Following the hearing, on May 6, 2024, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 24-45. The Appeals Council denied Plaintiff's request for review, Tr. 1-7, so the ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

---

[1] Plaintiff filed this case against Martin O'Malley, the Commissioner of Social Security on July 26, 2024. ECF No. 1. Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Accordingly, Commissioner Bisignano has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. §§ 301 et seq.

*Danielle W. v. Bisignano*
Civil No. 24-3516-DRM
March 6, 2026
Page 2

## II.    THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff had "not engaged in substantial gainful activity since October 30, 2022, the alleged onset date." Tr. 29. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "post-traumatic stress disorder (PTSD), major depressive disorder, obsessive-compulsive disorder (OCD), general anxiety disorder (GAD), bipolar disorder, and gender dysphoria." Tr. 30. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 30. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: she can perform jobs consisting of simple, routine, and repetitive tasks, involving only simple, work-related decisions, with only occasional changes in the routine work setting, but not at a production-rate pace, as would be required in an assembly line where each job task must be completed within strict time periods. She can perform jobs with occasional interaction with supervisors, coworkers (no tandem work), and with brief and superficial interaction with the public. Time off task during the workday can be accommodated by normal breaks, i.e., she is able to sustain attention and concentration for 2 hours at a time.

Tr. 33. The ALJ determined that Plaintiff was unable to perform any past relevant work, but could perform jobs that existed in significant numbers in the national economy, such as commercial cleaner, laundry worker, or linen room attendant. Tr. 40-41. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 41.

## III.    LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive .

*Danielle W. v. Bisignano*
Civil No. 24-3516-DRM
March 6, 2026
Page 3

. . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla but may be somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

IV.    **ANALYSIS**

Plaintiff raises two arguments on appeal. First, Plaintiff argues that "the ALJ erred by disregarding Plaintiff's subjective complaints based on their alleged inconsistency with the objective medical evidence in the record in contravention of controlling precedent." ECF No. 11 at 11. Second, Plaintiff argues that the ALJ "cherry-picked isolated findings from a record that overwhelmingly demonstrates disabling psychiatric impairments," and thereby provided "no meaningful explanation of how Plaintiff's documented symptoms, particularly her dissociation, fatigue, suicidal ideation, and poor attention and concentration, translate into the residual capacity to sustain full-time work." *Id.* at 16-17. Defendant counters that the "the ALJ appropriately considered Plaintiff's symptoms in relation to the rest of the evidence, including Plaintiff's own statements about the efficacy of treatment, the history of her treatment, and the evidence submitted by examining and non-examining consultants." ECF No. 13 at 12.

An ALJ properly analyzes subjective complaints by using a two-part test. *See Craig*, 76 F.3d at 594–95. First, the ALJ must assess the objective medical evidence and determine whether the plaintiff has a medically determinable impairment that could reasonably be expected to produce the pain or symptoms alleged. 20 C.F.R. §§ 404.1529(b), 416.929(b); Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *4 (S.S.A. Mar. 16, 2016). Second, if the ALJ finds a medically determinable impairment, the ALJ assesses the plaintiff's symptoms to determine how the symptoms' intensity and persistence affect the plaintiff's ability to work. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c). At the second step, "there need not be objective evidence of the pain [or symptoms] itself or its intensity." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020) (quoting *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989)).

Because "disability benefits can be awarded on the sole basis of an objective impairment and derivative subjective pain" or symptoms, a claimant may "rely exclusively on subjective evidence" at the second step. *Oakes v. Kijakazi*, 70 F.4th 207, 215 (4th Cir. 2023) (quoting *Arakas*, 983 F.3d at 96). Thus, "an ALJ applies the incorrect legal standard in discrediting complaints 'based on [a] lack of objective evidence corroborating them.'" *Id.* (quoting *Arakas*, 983 F.3d at 96) (brackets in original); *accord* SSR 16-3p, 2017 WL 5180304, at *5 ("[W]e will not disregard an individual's statements about [their] symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual."). Instead, the ALJ is required to balance the record evidence as "[a] report of ... inconsistencies in the objective medical evidence is one of the many factors ... consider[ed] in evaluating" this prong.

*Danielle W. v. Bisignano*
Civil No. 24-3516-DRM
March 6, 2026
Page 4

*Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 360 (4th Cir. 2023) (quoting SSR 16-3p, 2016 WL 1119029, at *5).

Because the Plaintiff suffers from Major Depressive Disorder ("MDD"), an additional restriction applies in this case. In *Arakas*, the Fourth Circuit stated:

> we join those circuits by holding that ALJs may not rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia *or some other disease that does not produce such evidence*. Objective indicators such as normal clinical and laboratory results simply have no relevance to the severity, persistence, or limiting effects of a claimant's fibromyalgia, based on the current medical understanding of the disease.

*Arakas*, 983 F.3d at 97 (emphasis added.)

In *Shelley* C., the Fourth Circuit extended the holding of *Arakas* to "depression—particularly chronic depression," holding that it was "one of those other diseases" that does not produce objective medical evidence. *Shelley C.*, 61 F.4th at 360-61. This is because

> the DSM-V declares that "no laboratory test has yielded results of sufficient sensitivity and specificity to be used as a diagnostic tool for [MDD.]" But most importantly, "[s]ymptoms caused by major depression can vary from person to person." Stated differently, symptoms of MDD, like those of fibromyalgia, are "entirely subjective," determined on a case-by-case basis.

*Id.* at 361 (citations omitted.)

Here, at the first step, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" Tr. 34. At the second step, however, the ALJ concluded that Plaintiff's

> statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

Tr. 34.

Plaintiff contends this second step was in error; in particular, she argues that "the ALJ cited the absence of a suicide plan (Tr. 35, 36, 38); 'normal' attention and concentration during select evaluations (Tr. 31, 35); and 'appropriate' affect on occasion (Tr. 35)," and thereby violated the rule of *Shelley C.* that "objective indicators must not factor adversely into the second step of this analysis" for chronic depression. ECF No. 11 at 16.

*Danielle W. v. Bisignano*
Civil No. 24-3516-DRM
March 6, 2026
Page 5

Defendant draws a distinction between the ALJ's improper holding in *Shelley C.* that the plaintiff's subjective statements were:

> inconsistent with the medical evidence of record, which reflects a routine and conservative treatment history, and generally benign mental status examinations,

*Shelley C.* 61 F.4th at 359, and the ALJ's analysis in the present case, which Defendant characterizes as follows:

> [The ALJ] did not suggest (let alone require) that Plaintiff's alleged limitations must be validated by objective support. To the contrary, the linchpin of the ALJ's finding was Plaintiff's own subjective reports to her treatment providers that her mental health symptoms improved, and she would be engaged in more activities.

ECF No. 13 at 9.

This case is less clear-cut than *Shelley C.* The ALJ decision in that case points directly to its improper reliance on objective medical evidence, specifically on "generally benign mental status examinations." *Shelley C.* 61 F.4th at 359. In the present case, however, the ALJ states broadly that the inconsistency arises "for the reasons explained in this decision." Tr. 34.

Although the ALJ discusses the medical evidence in depth, the decision contains few if any *explicit* comparisons between Plaintiff's statements about her MDD symptoms and objective medical evidence. Moreover, Plaintiff suffers from several other psychological impairments to which the Fourth Circuit has not, to date, extended the holding of *Arakas*. For these conditions, it would not be improper for the ALJ to consider objective medical evidence as one factor in the evaluation of Plaintiff's subjective statements. For any given piece of evidence, it is difficult to determine whether the ALJ's discussion includes or excludes Plaintiff's statements about MDD symptoms specifically. However, given the ALJ's broad reference to "the reasons explained in this decision," the Court concludes that it must treat any discussion in the ALJ decision of objective medical evidence (or at least that which plausibly relates to MDD) as a factor relied on by the ALJ.

The Court agrees with Defendant's implicit premise that a Plaintiff's "own subjective reports to her treatment providers" are not automatically converted into objective medical evidence merely because a provider writes them down. The Court does not read *Arakas* and *Shelley C.* to mean that an ALJ may not compare the subjective statements a Plaintiff makes directly to the SSA with the subjective statements she made to a provider.

However, specific items to which Plaintiff points in her brief are *not* mere transcriptions of Plaintiff's subjective statements. Rather, they contain providers' clinical interpretations of their observations of Plaintiff, including multiple instances of formulations such as "she was alert and oriented," "her attention and concentration was normal," "her affect was appropriate," "her functional status was intact," "she was interactive," and the like. Tr. 31, 35. Such reports of normal findings imply the absence (at least temporarily) of "[p]sychiatric signs" of MDD, and therefore

*Danielle W. v. Bisignano*
Civil No. 24-3516-DRM
March 6, 2026
Page 6

the absence of "objective medical evidence" of its symptoms.[3] The ALJ's inclusion of these findings suggests he engaged in the analysis forbidden by *Arakas* and *Shelley C.*: "rely[ing] on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of" chronic depression. *Arakas,* 983 F.3d at 97. *See Shelley C.*, 61 F.4th at 361.[4]

Because the ALJ improperly increased Plaintiff's burden of proof, in effectively requiring that subjective statements be validated by objective medical evidence, the Court must find error. *See Arakas,* 983 F.3d at 96 (citing *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017)). The ALJ's decision to partially discredit Plaintiff's subjective statements concerning the intensity, persistence, and limiting effects of her symptoms is accordingly unsupported by substantial evidence. Thus, the Court is unable to find that the ALJ's determination is supported by substantial evidence and finds that remand is required.

## V.    CONCLUSION

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be docketed as a Memorandum Opinion. A separate implementing Order follows.

---

[3] Social Security regulations define *objective medical evidence* as "medical signs, laboratory findings, or both." 20 C.F.R. §§ 404.1502(f), 416.902(k). *Signs* is further defined to mean:

> one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception, and must also be shown by observable facts that can be medically described and evaluated.

20 C.F.R. §§ 404.1502(g), 416.902(l).

[4] Plaintiff's reports to her providers of decreased suicidal ideation present a closer call. *See* Tr. 35, 36, 38. These appear less in the nature of clinical findings about a sign of MDD, and more in the nature of documenting Plaintiff's subjective statements about symptoms.

*Danielle W. v. Bisignano*
Civil No. 24-3516-DRM
March 6, 2026
Page 7

Sincerely,

/s/

Douglas R. Miller
United States Magistrate Judge